JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TRACEY LALL

### DEFENDANTS
CORNER INVESTMENT CO. dba THE CROMWELL HOTEL AND CASINO; CAESARS ENTERTAINMENT CORPORATION; Unite Here Local 165

**(b)** County of Residence of First Listed Plaintiff    Clark County, Nevada
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Clark County, Nevada
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Mcavoyamaya, Esq. (702) 299-5083
4539 Paseo Del Ray,
Las Vegas, NV

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sections 12101 et seq, 29 U.S.C. 185, 29 USC 2601 et seq.
Brief description of cause:
employment discrimination, fmla, breach of collective bargaining agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   100,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
07/10/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael J. Mcavoyamaya

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone:    (702) 685-0879
Mmcavoyamayalaw@gmail.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA
* * * *

| | |
|---|---|
| TRACEY LALL, an individual, | CASE NO.: |
| Plaintiff, | |
| vs. | |
| CORNER INVESTMENT CO. dba THE CROMWELL HOTEL AND CASINO, a domestic limited liability company; CAESARS ENTERTAINMENT CORPORATION a foreign domestic corporation; UNITE HERE LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, a labor union; UNITE HERE BARTENDERS UNION, LOCAL NO. 165, a labor union, DOES 1-20; and ROE CORPORATIONS 1-20, inclusive, | **COMPLAINT** **(DEMAND FOR JURY TRIAL)** |
| Defendants. | |

COME NOW, Plaintiff TRACEY LALL, by and through their attorney of record MICHAEL J. MCAVOYAMAYA, ESQ., and hereby complain and allege as follows:

I.    **PARTIES**

1.    Plaintiff TRACEY LALL is and was at all times relevant herein a resident of Clark County, Nevada.

2.    Defendant CORNER INVESTMENT COMPANY dba THE CROMWELL HOTEL AND CASINO (the "Cromwell") is and was at all times relevant herein a Nevada domestic corporation residing and doing business in Clark County.

3.    Defendant CAESARS ENTERTAINMENT CORPORATION ("Caesars") is and was at all times relevant herein a foreign corporation incorporated in the state of Delaware,

but residing and doing business in Clark County, state of Nevada. Caesars and the Cromwell together are referred to as the "Cromwell Defendants."

4.     Defendants UNITE HERE Local Joint Executive Board of Las Vegas and UNITE HERE BARTENDERS UNION, LOCAL NO. 165 ("Local 165") are labor unions operating in Clark County, Nevada, representing the employees of the Cromwell.

5.     The true names of DOES 1 through 20, their citizenship and capacities, whether individual, corporate, associate, partnership or otherwise, are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names.  Plaintiffs are informed and believe, and therefore allege, that each of the Defendants, designated as DOES 1 through 20, are or may be legally responsible for the events referred to in this action, and caused damages to the Plaintiffs, as herein alleged, and Plaintiffs will ask leave of this Court to amend the Complaint to insert the true names and capacities of such Defendants, when the same have been ascertained, and to join them in this action, together with the proper charges and allegations.

6.     That the true names and capacities of Defendants named herein as  DOE AGENCIES 1 through 20 and ROE CORPORATIONS 1 through 20, inclusive, are unknown to the Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE AGENCIES and/or ROE CORPORATION Defendant is responsible for the events and happenings referred to and proximately caused damages to the Plaintiffs as alleged herein. Plaintiffs will ask leave of the Court to amend the Complaint to insert the true names and capacities of DOE AGENCIES 1 through 20 and ROE CORPORATIONS 1 through 20, inclusive, when the same have been ascertained, and to join such Defendants in this action.

//

//

//

## II.  JURISDICTION AND VENUE

7. This Court jurisdiction over the claims as set forth herein pursuant to 29 U.S.C. § 185, holding that claims for violation of a collective bargaining agreement are preempted by the Labor Management Relations Act ("LMRA").

8. Additionally, this Court has jurisdiction over this matter for violation of the Americans with Disabilities Act and the Family Medical Leave Act pursuant to 28 USC § 1331 and §1343, and supplemental jurisdiction over the state law claims pursuant to 28 USC §1367.

9. Venue is proper in this Court because all parties are residents of Clark County, State of Nevada.

## III.  ALLEGATIONS COMMON TO ALL CLAIMS

10. Plaintiff Tracey Lall began working as a bartender for Defendant The Cromwell Hotel and Casino on April 23, 2014.

11. During her time working at The Cromwell, Tracey was a model employee winning numerous employee awards including the annual Chairman Award in 2015 and 2017, and a high number of Guest Verbatims.

12. In August 2016, Tracey was diagnosed with breast cancer and began radiation treatment. Tracey notified Cromwell right away about her cancer diagnosis and need for radiation treatment.

13. On April 22, 2017, Tracey had a minor tremor/seizure at work and was sent home by her supervisor. Tracey went to the restroom briefly to tend to her medical needs and returned to the bar thereafter.

14. On May 31, 2017, Tracey had another minor tremor/seizure at work. Tracey went to the restroom briefly to tend to her medical needs and returned to the bar thereafter but was sent to the hospital to seek medical treatment.

15. On January 17, 2018, Cromwell General Manager Mike Norby texted Tracey that "HR wanted to speak to [her] about [her] situation" and asked Tracey if she was "able to perform her job duties." Tracey responded "yes," and presented Human Resources ("HR") with a medical release to work unrestricted full duty form from her doctor.

16. On January 24, 2018, Tracey started chemotherapy, and informed Cromwell of her need for chemotherapy treatment that day.

17. On March 16, 2018 Tracey had another minor tremor/seizure at work. Tracey went to the restroom briefly to tend to her medical needs and returned to the bar thereafter but was sent home by her supervisor.

18. On April 6, 2018, Tracey took Family Medical Leave Act ("FMLA") leave until June 16, 2018 (2 months, 10 days), in order to undergo a round of chemotherapy treatment. Tracey returned to work at the Cromwell and provided HR a doctor's note indicating that she could return to full duty with no restrictions.

19. Tracey worked for two weeks and then had another minor tremor/seizure. Tracey went to the restroom briefly to tend to her medical needs. While in the bathroom, a co-worker, Giselle Del Real, followed Tracey into the handicapped bathroom stall as she was having a seizure and videotaped her in the bathroom. The Cromwell forced Tracey back on leave of absence.

20. When Tracey requested to take her FMLA leave she was denied for not meeting the minimum hours requirement despite her previous approval for a time period of April 10, 2018-April 10, 2019. Tracey was forced to take personal leave.

21. Tracey provided Cromwell a Return to Work Authorization signed by her doctor that stated that she could return to work with no restrictions on October 26, 2018, which was her return to work date.

22.     On November 16, 2018 Silvia Ocampo from Human Resources told Tracey that she was unable to work due to having prior minor tremors/seizures at work.  At the time, Tracey's cancer was in remission, she had not had a seizure for several months, and was no longer undergoing radiation or chemotherapy.

23.     Tracey's union, Local 165, failed to file a grievance on Tracey's behalf, forcing Tracey to file her own grievance regarding the retaliation, discrimination and harassment for her disability that she was receiving at work, which was causing her undue stress and exacerbating her seizure condition.

24.     The Cromwell again forced Tracey to take personal leave and denied her request for the previously approved FMLA leave.

25.     On January 12, 2019, Tracey returned to work and had a tremor/seizure and was again forced onto personal leave.

26.     Each time Tracey was forced to go on leave of absence, instead of FMLA leave, I was given 5 days to get signed documents from doctors even after Tracey told management that it takes several weeks just to get a doctor's appointment

27.     Tracey returned to work in April 2019. After her return to work, the Cromwell began laying pretext for her termination. Between April 1, 2019 and November 2, 2019 the Cromwell issued Tracey four (4) disciplinary write-ups, three (3) suspensions, and four (4) backdated cash shortages.

28.     Tracey received a written warning that was back dated for April 7, 2019 noting a cash variance of $100.41 on April 7, 2019 and a total cumulative shortage of $108.46 for the month of April 2019. No evidence or spread sheet supporting the supposed shortage was included with the disciplinary notice, nor provided to Tracey. Local 165 filed no grievance, did not attend the meeting with the employer, nor request any information regarding the write up.

29.     On June 3, 2019, Tracey received a written warning dated back to April 29, 2019, stating that Tracey had a cash variance of $23.58. No evidence or spread sheet supporting the supposed shortage was included with the disciplinary notice, nor provided to Tracey. Local 165 filed no grievance, did not attend the meeting with the employer, nor request any information regarding the write up.

30.     On August 2, 2019, Tracey had a minor tremor/seizure at work, and as she notice it occurring Tracey went to the bathroom to tend to her medical needs. This time, a security officer for the Cromwell followed Tracey to the bathroom, began harassing her, and asking her to take a drug test. She refused. By this time, the Cromwell was well aware of Tracey's medical condition.

31.     Tracey was given a blank written disciplinary notice and suspended with no explanation for why she was being suspended. Local 165 filed no grievance, did not attend the meeting with the employer, nor request any information regarding the write up.

32.     On August 7, 2019, Tracey contacted General Manager Mike Norby via telephone to check on the basis and status of her unexplained suspension.  Tracey received no responses from Norby or Cromwell HR.

33.     On August 9, 2019, Tracey handed Silvia Ocampo of Cromwell HR a statement/grievance saying that she was being harassed and discriminated against by co-workers looking to gain her position due to her seizures, which was causing her undue stress. No action was taken by management or HR.

34.     On August 14, 2019, Tracey again contacted Mr. Norby to check on the status of her suspension.  Mr. Norby and Ms. Ocampo answered the call and informed Tracey that she was "a liability to the company due to your situation."

35.     On August 17, 2019, Tracey received a written final warning dated back to August 2, 2019, stating that she was unfit for duty and refused to take a drug test on August

2, 2019. Local 165 filed no grievance, did not attend the meeting with HR, and did not request any information relating to the discipline.

36.     Cromwell Management accused Tracey of being on drugs due to a casino security guard following her into the women's restroom and telling General Manager Mike Norby that she was having a seizure in the private stall.

37.     On October 4, 2019, Tracey was suspended for "Possible rules violation." Local 165 filed no grievance, did not attend the meeting with HR, and did not request any information relating to the discipline.

38.     On October 6, 2019, Tracey received a final written warning dated back to September 30, 2019, stating that Tracey had a cash variance of $30.30. Tracey was again given no documentation supporting this discipline. Local 165 filed no grievance, did not attend the meeting with HR, and did not request any information relating to the discipline.

39.     On November 2, 2019, Tracey was suspended stating she clocked in at an unauthorized area, dated back to October 6, 2019.  Local 165 filed no grievance, did not attend the meeting with HR, and did not request any information relating to the discipline.

40.     On January 11, 2020, Tracey was terminated for a supposed cash shortage of $67.00. Tracey was never notified of the shortage prior to the termination, and was given no documentation supporting the shortage. Local 165 filed no grievance, and did not request any information relating to the discipline.

41.     Tracey filed a grievance regarding her termination on January 14, 2020. A grievance meeting was held, and her Local 165 union representative attended this meeting. Half way through the meeting, however, the union representative asked Tracey to leave the room and wait in the waiting area.

42.     After the meeting regarding Tracey's termination between the Local 165 representative and Cromwell management outside of Tracey's presence finished, the Local

165 Representative, Mike, came out of the meeting and told Tracey that she "should find another job, and that her looks will not last forever." Local 165 took no further action on Tracey's behalf.

43.     Between 2016 and 2020, Tracey requested that the Cromwell provide her the reasonable accommodation of allowing her to use the bathroom on the casino floor, rather than the employee restroom two floors from where her bar was, so that she would not need to run down two flights of stairs to tend to her medical needs when having minor tremors/seizures due to her cancer and radiation and chemotherapy treatment. Each request was denied.

## FIRST CLAIM FOR RELIEF

**(Disability Discrimination In Violation of the Americans with Disabilities Act ("ADA") Title I – Failure to Provide Reasonable Accommodations)**

44.     Plaintiffs restate and reallege all preceding and subsequent allegations as though fully set forth herein.

45.     That the ADA, 42 U.S.C. Sections 12101 et seq. prohibits employment discrimination based on disability or perceived disability in the terms, conditions, promotion opportunities, salary and benefit and classification of employees.

46.     That Tracey was and is disabled as defined by the ADA because she suffers from a qualifying disability, cancer, which is a physical impairment that substantially limits one or more of the major life activities including weight, ability to control my bodily functions by causing me tremors/seizures, her apatite and ability to hold down food, her energy level and ability to exercise, and her ability to sleep. *See Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) quoting 42 U.S.C. § 12102(2).

47.     That despite her disability, Tracey was physically, mentally and medically capable of performing the duties of her job as a bartender at the time she was hired up until her termination, which was supported by numerous doctor's notices.

48.    Tracey was, accordingly, at all times relevant hereto a qualified individual with a disability within the meaning of the ADA Section 101(8), 42 USC §12111(8).

49.    That the Cromwell Defendants discriminated against Tracey on the basis of her disability by failing to participate in the interactive process upon her request for accommodations in good faith.

50.    That the Cromwell Defendants discriminated against Tracey on the basis of her disability by refusing to provide her with the reasonable accommodation of being able to use the rest room on the casino floor when she felt a minor tremor coming on, as required by the ADA.

51.    That as a direct and proximate result of the Cromwell Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof at trial.

52.    That as a direct and proximate result of the Cromwell Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has suffered, and will continue to suffer lost wages, salary, benefits and certain other incidental and consequential economic expenses and losses which Plaintiff would have received if Plaintiff had not been terminated from her position with the Cromwell Hotel and Casino, in an amount according to proof at trial but believed to be in excess of $100,000.

53.    That the above-alleged acts of discrimination against Plaintiff constitutes oppression, fraud, malice or Plaintiff is otherwise entitled to an award of punitive damages according to proof at trial.

54.    That the Cromwell Defendants' conduct exacerbated Plaintiff's disabling condition by creating a stressful work environment.

55.     Plaintiff has incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial.

**SECOND CLAIM OF RELIEF**

**(Retaliation in Violation of the ADA)**

56.     Plaintiff restates and realleges all preceding and subsequent allegations as though fully set forth herein.

57.     The ADA, 42 U.S.C. § 12203(a) prohibits retaliation against employees who oppose violations of disability discrimination under the ADA, or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

58.     That 42 U.S.C. § 2000e-3(a) provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency ... to discriminate against any individual or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

59.     That to assert a retaliation claim under federal EEO laws, including the ADA, a plaintiff must show that he or she (1) engaged in prior protected activity; (2) the employer took a materially adverse action; and (3) the requisite level of causal connection between the protected activity and the materially adverse action.

60.     That Plaintiff engaged in protected activity when she requested the reasonable accommodation of being permitted to use the bathroom on the casino floor instead of the employee bathroom two flights of stairs below it.

61.     That after requesting to use the bathroom on the casino floor to tend to her medical needs, the Cromwell Defendants and their employees followed Plaintiff into the restroom and accused her of alcohol and drug use despite being fully aware of her medical condition, allowed other employees to harass her over her disability with impunity, and forced her to take personal leave despite being fully capable of doing her job.

62.     That as a direct and proximate result of the Cromwell Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof at trial.

63.     That as a direct and proximate result of the Cromwell Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has suffered, and will continue to suffer lost wages, salary, benefits and certain other incidental and consequential economic expenses and losses which Plaintiff would have received if Plaintiff had not been terminated from her position with the Cromwell Hotel and Casino, in an amount according to proof at trial but believed to be in excess of $100,000.

64.     That the above-alleged acts of discrimination against Plaintiff constitutes oppression, fraud, malice or Plaintiff is otherwise entitled to an award of punitive damages according to proof at trial.

65.     That the Cromwell Defendants' conduct exacerbated Plaintiff's disabling condition by creating a stressful work environment.

66.     Plaintiff has incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial.

//

//

//

**THIRD CLAIM FOR RELIEF**

**(Disability harassment resulting in a hostile work environment in violation of the ADA)**

67.     Plaintiff restates and realleges all preceding and subsequent allegations as though fully set forth herein.

68.     That Plaintiff informed the Cromwell Defendants of her disabling condition and that she would be undergoing radiation and chemotherapy treatment.

69.     That upon returning to work, the Cromwell Defendants began harassing Plaintiff, telling her she was unfit for work, forcing her to take leave when she was able to work, wrote her up for minor infractions and infractions she did not commit, and allowed other employees to harass and intimidate her because of her disability.

70.     That as a direct and proximate result of the Cromwell Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof at trial.

71.     That as a direct and proximate result of the Cromwell Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has suffered, and will continue to suffer lost wages, salary, benefits and certain other incidental and consequential economic expenses and losses which Plaintiff would have received if Plaintiff had not been terminated from her position with the Cromwell Hotel and Casino, in an amount according to proof at trial but believed to be in excess of $100,000.

72.     That the above-alleged acts of discrimination against Plaintiff constitutes oppression, fraud, malice or Plaintiff is otherwise entitled to an award of punitive damages according to proof at trial.

73.     That the Cromwell Defendants' conduct exacerbated Plaintiff's disabling condition by creating a stressful work environment.

74.     Plaintiff has incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial.

**FOURTH CLAIM FOR RELIEF**

**(Violation of the Family Medical Leave Act ("FMLA")**

75.     Plaintiffs restate and reallege all preceding and subsequent allegations as though fully set forth herein.

76.     That the Cromwell Defendants were employers covered by the FMLA pursuant to 29 USC 2601 *et seq.* because they have more than fifty (50) employees consecutively for at least one year prior to the incident in question.

77.     That Plaintiff suffered from a chronic medical condition, cancer, as defined by 29 C.F.R. 825.115(c)(1), requiring periodic visits with her treating physician more than twice a year, and was entitled to leave under the act pursuant to 29 C.F.R. 825.115(c)(1)

78.     That Plaintiff requested and was approved for FMLA leave on April 2, 2018, for a period of April 6, 2018 – April 10, 2019, to undergo numerous rounds of chemo therapy.

79.     That Plaintiff submitted a FMLA form signed by her treating physician confirming the following treatment dates for her chemotherapy: April 10, 2018, June 5, 2018, July 17, 2018.

80.     That the Cromwell Defendants permitted Plaintiff to take two months and ten days of leave for her first round of chemotherapy treatment.

81.     That after Plaintiff returned to work on June 16, 2018, within a couple weeks she had a minor tremor/seizure at work due to her medical condition.

82.     That the Cromwell Defendants then forced Plaintiff to take leave in July 2018, and when she requested the previously approved FMLA leave apply the Cromwell Defendants denied Plaintiff her FMLA leave asserting that she did not have the requisite 1,250 hours to receive FMLA leave.

83.     That Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining or denying Plaintiffs' rights provided under the Act by counting the two month and ten day time period that Plaintiff was previously on FMLA leave when calculating the number of hours Plaintiff had worked previous year to deny her FMLA leave under the act.

84.     That Defendants' actions foreclosed Plaintiff's rights under the FMLA, including but not limited to the right to be returned to her position, the right to be free from harassment for attempting to exercise her rights under the act, and the right to take the previously approved FMLA leave.

85.     That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful actions to restrain or deny Plaintiff from exercising her rights under the act, Plaintiff has and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof at trial.

86.     That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful actions, Plaintiff has suffered, and will continue to suffer lost wages, salary, benefits and certain other incidental and consequential economic expenses and losses which Plaintiff would have received if she had not been terminated from her position with The Cromwell in an amount according to proof at trial, but believed to be in excess of $100,000.

87.     The above-alleged misconduct constitutes oppression, fraud or malice thereby entitling Plaintiff to an award of punitive damages according to proof at trial.

88.     Plaintiff has incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial.

//

//

//

//

## FIFTH CLAIM FOR RELIEF

**(Labor Management Relations Act ("LMRA") Section 301, 29 U.S.C. § 185 - Breach of Collective Bargaining Agreement – Hybrid Section 301 DFR Claim)**

89.     Plaintiffs restate and reallege all preceding and subsequent allegations as though fully set forth herein.

90.     That Article 21.02 of the Cromwell collective bargaining agreement ("CBA") provides that provides that grievances must be filed on behalf of an employee within fifteen workdays of the occurrence.

91.     That despite Tracey's numerous requests to her Local 165 representative for assistance in filing grievances due to the Cromwell Defendants' numerous unwarranted written discipline, Local 165 failed to meet its duty of fair representation by failing to file a single grievance on her behalf between January 2018 and January 2020.

92.     That despite Tracey's numerous requests to her Local 165 representative for assistance when being discipline by the Cromwell Defendants' between January 2018 and January 2020, Local 165 failed to meet its duty of fair representation by failing to attend a single grievance on her behalf except her termination meeting in violation of Article 21.03.

93.     That despite the merits of Tracey's grievances, Local 165 failed to take any grievance to Step 2 of the grievance procedure, nor take the grievance to arbitration.

94.     Industrial common law defines the seven steps of just cause as: (1) Notice: Did the Employer give notice of the possible consequences of disciplinary conduct?; (2) Reasonable Rules and Orders: Was the Employer's rule reasonably related to the proper expectations that the Employer may have?; (3) Investigation: Did the Employer make an effort to discover whether the Employee did in fact violate a rule?; (4) Fair Investigation: Did the Employer conduct the investigation objectively and fairly?; (5) Proof: Did the Employer gather sufficient proof or evidence to indicate the Employee was guilty?; (6) Equal Treatment: Has the Employer

applied its rules and discipline evenly among all of its employees?; (7) Penalty: Was the penalty handed down by the Employer reasonable given the nature of the disciplinary conduct and the Employee's overall employment record? *Enterprise Wire Co.*, 46 Lab. Arb. Rep. (BNA) 359, 362-65 (1966) (Daughtry Arb.); Koven and Smith, Just Cause, The Seven Tests, at p. 438 n. 194; *see also Assn. of W. Pulp & Paper Workers, Loc. 78 v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1091 (9th Cir. 2000).

95.     That the Cromwell Defendants did not terminate Plaintiff for just cause in violation of Article 6.01 of the CBA and did not follow progressive counseling when disciplining Tracey.

96.     That there was no basis for the Cromwell Defendants' four write-ups, three suspensions and Tracey's ultimate termination between May 10, 2019 and January 11, 2020, which were simply a pretext for terminating Tracey for her disability in violation of Article 8 of the CBA.

97.     That Local 165 failed to file for arbitration of the grievance and Plaintiff's termination from the Cromwell was not overturned.

98.     That Local 165 representative, Mike, simply told Tracey to find a new job making derogatory and discriminatory comments about her gender and age in relation to her employment in violation of Article 8 of the CBA.

99.     Local 165 breached its duty of fair representation owed to Plaintiff, and both Local 165 and the Cromwell Defendants violated numerous provisions of the CBA in their treatment of Tracey.

100.     That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful actions, Plaintiff has and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof at trial.

101.     That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful actions, Plaintiff has suffered, and will continue to suffer lost wages, salary, benefits and certain other incidental and consequential economic expenses and losses which Plaintiff would have received if he had not been terminated from his position with Defendant SLS in an amount according to proof at trial, but believed to be in excess of $100,000.

102.     The above-alleged misconduct constitutes oppression, fraud or malice thereby entitling Plaintiff to an award of punitive damages according to proof at trial.

103.     Plaintiff has incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial.

## SIXTH CLAIM FOR RELIEF

**(Disability Discrimination In Violation Nevada Revised Statute ("NRS") 613.330(1))**

104.     Plaintiffs restate and reallege all preceding and subsequent allegations as though fully set forth herein.

105.     That NRS 613.330(1) prohibits employment discrimination based on disability or perceived disability in the terms, conditions, promotion opportunities, salary and benefit and classification of employees.

106.     That Plaintiff was and is disabled as defined under Nevada law because she suffers from a recognized impairment, diabetes, which substantially limited major life activities including, but not limited to, walking, eating and working.

107.     That despite her disability, Plaintiff was physically, mentally and medically qualified to perform the duties of her job as an bartender with the Cromwell at the time she was hired up until her termination.

108.     That Defendants discriminated against Plaintiff on the basis of her disability by failing to participate in the interactive process, retaliation, harassment as outlined above.

109.     That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof at trial.

110.     That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff Miller, Plaintiff has suffered, and will continue to suffer lost wages, salary, benefits and certain other incidental and consequential economic expenses and losses which Plaintiff would have received if Plaintiff had not been terminated from her position with The Cromwell in an amount according to proof at trial, but believed to be in excess of $100,000.

111.     The above-alleged misconduct constitutes oppression, fraud or malice thereby entitling Plaintiff to an award of punitive damages according to proof at trial.

112.     Plaintiff has incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial.

## SEVENTH CLAIM OF RELIEF

### (Retaliation in Violation of NRS 613.340(1))

113.     Plaintiffs restate and reallege all preceding and subsequent allegations as though fully set forth herein.

114.     NRS 613.340(1) makes it an "unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because he has opposed any practice made an unlawful employment practice by NRS 613.310 to 613.435, inclusive, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under NRS 613.310 to 613.435, inclusive."

115.   That Plaintiff engaged in protected activity when, she sought reasonable accommodations for her disability and was subsequently retaliated against by the Cromwell Defendants as outlined above.

116.   That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof at trial.

117.   That as a direct and proximate result of Defendants' willful, knowing, intentional, and unlawful discrimination against Plaintiff, Plaintiff has suffered, and will continue to suffer lost wages, salary, benefits and certain other incidental and consequential economic expenses and losses which Plaintiff would have received if Plaintiff had not been terminated from her position with The Cromwell in an amount according to proof at trial, but believed to be in excess of $100,000.

118.   The above-alleged misconduct constitutes oppression, fraud or malice thereby entitling Plaintiff to an award of punitive damages according to proof at trial.

119.   Plaintiff has incurred reasonable attorneys' fees and costs in prosecuting this matter in an amount to be established at trial.

## IV.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for jury trial and judgment in their favor as follows:

 1. General damages according to proof at trial;

2. Pre-judgment and post-judgment interest on said sum of damages;

3. Special damages for financial loss according to proof at trial;

4. Punitive damages as allowed by law;

5. Costs of suit herein;

6. Reasonable attorney fees according to proof at trial under federal and state law; and

7. Such other and further relief as this court may deem just and proper.

Dated this 10th day of July, 2020.

/s/ Michael J. Mcavaoyamaya

_____

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone:     (702) 685-0879
Mmcavoyamayalaw@gmail.com
*Attorney for Plaintiffs*