UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Tracey Lall,

          Plaintiff

v.

Corner Investment Company (d/b/a The Cromwell Hotel and Casino), et al.,

          Defendants

Case No. 2:20-cv-01287-CDS-NJK

**Order Granting in Part Motions for Attorneys' Fees**

[ECF Nos. 141, 142]

    Sometimes in litigation, you've got to know when to hold 'em, know when to fold 'em, know when to walk away, and know when to run.[1] Plaintiff's counsel Michael Mcavoyamaya[2] would have done well to heed that credo here. Instead, he repeatedly dug in his heels, refusing to admit that entire claims and aspects of his position were unsupported by the underlying facts or well-settled law. In response, the defendants bring these post-judgment motions to sanction Mcavoyamaya, seeking attorneys' fees. Mcavoyamaya maintains that sanctions are inappropriate and that he represented his client in good faith. Upon Mcavoyamaya's request, I recently held a hearing (the "Sanctions hearing") to allow the parties to make further argument and to answer my questions. ECF No. 153. After reviewing the briefing and hearing additional arguments at the Sanctions hearing, I find that Mcavoyamaya acted recklessly by failing to voluntarily dismiss his client's duty-of-fair-representation claim against the union—Local 165—when it became clear that such claim was meritless. I further find that he acted in bad faith by: (1) failing to inform

---

[1] *See* Kenny Rogers, *The Gambler*, *on* The Gambler (United Artists 1978).

[2] Throughout this case, there has been ongoing confusion about the proper spelling of Mcavoyamaya's last name. *See* Order, ECF No. 130 at n.2. Local 165 refers to him as "McAvoyamaya," while the Cromwell defendants refer to him as "McAvoy Amaya," and he refers to himself as both "McAvoy Amaya" and sometimes "Mcavoyamaya." *Compare* ECF No. 141-1 at 6 *and* ECF No. 142-1 at 6 *with* ECF No. 143 at 1. He has not yet availed himself of my invitation to clarify the correct spelling of his name. *See* ECF No. 130 at n.2. For the sake of consistency with my previous orders, I refer to him as "Mcavoyamaya" throughout this order, and I construe the parties' various spellings as references to the same person.

opposing counsel and the court that he was abandoning the Family and Medical Leave Act (FMLA) claim until after the issue had been fully briefed at the summary-judgment stage, (2) by making misrepresentations to the court about evidence (or a lack thereof) and case law, (3) by raising novel arguments for the first time in reply briefs and at oral argument, and (4) by violating various local rules. I thus grant in part both motions for attorneys' fees, to be paid by Mcavoyamaya personally, awarding $93,030 in fees and $2,892 in costs for Local 165 and awarding $45,470 in fees for the Cromwell defendants.[3] I defer granting costs for the Cromwell at this juncture.

## I.     Legal standards

     a.     *Sanctions under 28 U.S.C. § 1927 and the court's inherent power.*

"Nevada follows the American rule that attorney fees may not be awarded absent a statute, rule, or contract authorizing such award." *Thomas v. City of N. Las Vegas*, 127 P.3d 1057, 1063 (Nev. 2006) (citations omitted). "District courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995) (citing *Frantz v. U.S. Powerlifting Federation*, 836 F.2d 1063, 1066 (7th Cir. 1987)). Here, the two bases for sanctions raised in the briefs are 28 U.S.C. § 1927 and the court's inherent power. Notably, "[w]hile Rule 11 authorizes sanctions only for filings that were frivolous when they were made . . . 'Section 1927 imposes a continuing duty on counsel to dismiss claims that are no longer viable.'" *Frost v. LG Electronics Inc.*, 2017 WL 2775041, at *2 (N.D. Cal. June 27, 2017) (quoting *Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993)); *accord Trulis*, 107 F.3d at 692). "A filing is frivolous if it 'is *both* baseless *and* made without a reasonable and competent inquiry.'" *Pratt v. California*, 11 F. App'x 833, 835 (9th Cir. 2001) (quoting *In re Keegan Mgmt. Co., Secs. Litig.*, 78 F.3d 431, 434 (9th Cir. 1995) (internal citation omitted)).

---

[3] As in previous orders, I refer to the three non-union defendants—Corner Investment Co. (doing business as The Cromwell Hotel and Casino); Caesars Entertainment, Inc.; and Caesars Growth Cromwell—collectively as "the Cromwell defendants." I refer to defendant Unite Here Bartenders Union, Local 165 herein as "Local 165" or "the Union."

Under § 1927, attorneys "who so multipl[y] the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also Lozano v. Cabrera*, 678 F. App'x 511, 513 (9th Cir. 2017). "Recklessness is all that is necessary to justify an award of fees and costs under § 1927, and the award must be satisfied by the offending attorney personally—not the client." *Mayorga v. Ronaldo*, 2023 WL 2020075, at *1 (D. Nev. Feb. 14, 2023) (citing 28 U.S.C. § 1927). While "reckless suffices for § 1927 . . . bad faith is required for sanctions under the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Trulis*, 67 F.3d at 788 (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)). Although district courts have the discretion to issue sanctions under both § 1927 and their inherent powers, such discretion must be exercised with restraint. *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010).

  b. *Requirements for fees motions under this district's local rules.*

Local Rule 54-14 and Federal Rule of Civil Procedure 54(d)(2) govern fees motions. In part, a motion for attorneys' fees must include a brief summary of:

> (A) [t]he results obtained and the amount involved; (B) [t]he time and labor required; (C) [t]he novelty and difficulty of the questions involved; (D) [t]he skill requisite to perform the legal service properly; (E) [t]he preclusion of other employment by the attorney due to acceptance of the case; (F) [t]he customary fee; (G) [w]hether the fee is fixed or contingent; (H) [t]he time limitations imposed by the client or the circumstances; (I) [t]he experience, reputation, and ability of the attorney(s); (J) [t]he undesirability of the case, if any; (K) [t]he nature and length of the professional relationship with the client; (L) [a]wards in similar cases; and (M) [a]ny other information the court may request.

LR 54-14(a)(3). Counsel must also provide an itemized list and description of the work performed and associated costs and an affidavit authenticating the information in the motion. LR 54-14(a)(1)–(2); LR 54-14(b).[4] If a party opposes a fees motion, the opposition "must set

---

[4] The Cromwell defendants argue that Mcavoyamaya tried to circumvent the page limits by attaching an 18-page affidavit to his response briefs. ECF No. 145 at 11–12 (citing ECF No. 143-1). He attached the same

forth the specific charges that are disputed and state with reasonable particularity the basis for the opposition." LR 54-14(d). And "[t]he opposition must include affidavits to support any contested fact." *Id*. Further, "[i]f either party wishes to examine [an] affiant, the party must specifically make that request in writing. Absent such a request, the court may decide the motion on the papers or set the matter for evidentiary hearing." *Id*. at (e).

II.   Discussion

    a.   *Mcavoyamaya's failure to voluntarily dismiss the duty-of-fair-representation claim against Local 165 amounts to an unreasonable, reckless multiplication of the proceedings, so sanctions are appropriate.*

Local 165 moves under 28 U.S.C. § 1927 and the court's inherent power for an award of $93,030 in attorneys' fees and $2,892 in costs, to be payable by Mcavoyamaya himself. ECF No. 141-1 at 19–20. It contends that Mcavoyamaya acted in bad faith by continuing to pursue Lall's duty-of-fair-representation claim against the Union even after he knew it was meritless. Local 165 points out that Mcavoyamaya was given documents in March 2021 showing that the Union had processed both of Lall's grievances, fulfilling its responsibility under the collective bargaining agreement and all but foreclosing the duty-of-fair-representation claim. *Id*. at 18. He was then given copies of text messages that Lall sent to the Union indicating that she did not want the termination grievance to be arbitrated. ECF No. 72-3 at 34–37, 110. At this point, Local 165 argues that Mcavoyamaya was obligated to voluntarily dismiss this claim against the Union. But instead, "the case continued for more than two years," during which Mcavoyamaya filed an amended complaint—still pursuing the claim against the Union—and the case proceeded all the way to summary judgment, which I granted in the defendants' favor on all claims. ECF No. 141-1

---

affidavit to his response to the Union's motion. ECF No. 144-1. Although the local rules require that attorneys submit a declaration in support of their opposition to a fees motion (LR 54-14(d)), 18 pages is excessive and, in this case, used in part to incorporate an argument that is not discussed elsewhere in the underlying brief. *See, e.g.*, ECF No. 143-1 at ¶¶ 7, 11, 12. I do not disagree with the Cromwell defendants' argument, but based on Mcavoyamaya's representations at the Sanctions hearing, he included additional argument to respond to my show cause order so I decline to strike his affidavit so I can resolve these motions.

at 6; ECF No. 117; ECF No. 118. At the Sanctions hearing, Mcavoyamaya contended that he pursued the claim in good faith, arguing that he was not provided with a "binding case" that squarely addressed the issues in his client's case. Specifically, he reiterated his opposition to the summary judgment motions, asserting that he relied (in good faith) on an "exception" in the *Jackson*[5] case that the Union's failure to grieve her termination violated their duty of fair representation. In response to Mcavoyamaya's oral argument, Local 165 argued that the *Jackson* case does not address the "exception" upon which Mcavoyamaya claims that he relied "in good faith" in bringing this action, and again cited to cases[6] that explicitly hold that an employee must afford a union the opportunity to act before bringing suit and that an employee may obtain judicial review despite the failure to exhaust if the employee can show that the union breached its duty of fair representation, noting that Lall did neither. The Union argues that here, at the very latest, Mcavoyamaya knew that Lall did not want the Union to act by March of 2021.

Local 165's counsel provides an itemization of the work performed and all costs incurred after March 26, 2021, the date on which Mcavoyamaya became aware that Lall's duty-of-fair-representation claim could not succeed. ECF Nos. 141-9; 141-10. The Union also provides a declaration from its lead counsel, Luke Dowling, verifying that the information provided is accurate. ECF No. 141-2. In response to the Union's motion, Mcavoyamaya argues that the motion does not comply with the local rules and should be stricken[7]; Local 165 has not provided him with the required particularized notice of his sanctionable conduct under Federal Rule of

---

[5] *Jackson v. S. California Gas, Co.*, 881 F.2d 638 (9th Cir. 1989).
[6] Referencing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965) and *Vaca v. Sipes*, 386 U.S. 171 (1967).
[7] Because each of these arguments lacks merit, I need not address them in depth. But I briefly discuss the motion to strike. Mcavoyamaya argues that Local 165 violated the local rules by using the incorrect margins and spacing in its motion, and the Union concedes that it inadvertently did so. ECF No. 146 at 16 n.4. Local 165 explains that once those errors are corrected, the motion "is still only 22 pages," and it was thus not attempting to circumvent the page limit. *Id.* While it is true that Local 165's motion violates the local rules, because the error was harmless and the brief was still within the page limit regardless, I decline Mcavoyamaya's invitation to strike the motion. I already struck both parties' briefs for failing to comply with the local rules (ECF No. 140), and it would not be in the interest of justice for me to do so again.

Procedure 11[8]; there was only one proceeding in this case, so he cannot have multiplied the proceedings[9]; Local 165 has not sufficiently demonstrated that he acted in bad faith; and the sought fees are unreasonable.[10] ECF No. 144 at 3–22. He also urges that he cannot be subject to sanctions because "[t]he [c]ourt already stated when granting summary judgment that sanctions were not going to be considered in this case[] but may be considered 'in the future[.]'"[11] *Id.* at 5.

           1.    *Mcavoyamaya knew in March 2021 that the duty-of-fair-representation claim was doomed and should have abandoned it.*

Mcavoyamaya initially filed this case in July 2020. ECF No. 1. Discovery commenced, and in March 2021, Local 165 provided Lall's counsel with its first set of documents, including the grievance that the Union filed on Lall's behalf and evidence of the Union's other efforts to

---

[8] Inexplicably, Mcavoyamaya argues that Local 165 failed to comply with Rule 11's safe-harbor provision by not providing written notice and service of the fees motion to Mcavoyamaya in order to give him an opportunity to cure the alleged violation. ECF No. 144 at 3–6. This entire argument is inapplicable, as neither Local 165 nor the Cromwell defendants seek sanctions under Rule 11. The safe-harbor provision is thus not implicated here.

[9] In a stunning display of literalism, Mcavoyamaya spends pages of his response brief arguing that "only one proceeding was held in this matter" (the summary-judgment hearing), so the defendants cannot recover attorneys' fees under § 1927 because "there were no proceedings multiplied." ECF No. 144 at 13–15. A proceeding is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Proceeding*, Black's Law Dictionary (11th ed. 2019). It is a catch-all term encompassing the collection of activities in a case, not a reference to the number of hearings or oral arguments held. Mcavoyamaya seems to misapprehend Local 165's argument that his conduct unnecessarily multiplied the filings, arguments, and fees in this case because Local 165 had to spend resources—as did the court—litigating a frivolous claim. The result would be the same had there been no hearings in this case whatsoever. But regardless, Mcavoyamaya's unnecessary multiplication of the proceedings is beyond debate (as discussed *infra*).

[10] Again, Mcavoyamaya misses Local 165's point. He contends that the "[d]efendants seek ordinary case costs in this matter for having to produce discovery and having to respond to routine motions that occur in every case that proceeds past the pleading stage[.]" ECF No. 144 at 23. But the defendants seek to be made whole as to their fees in this case because they would not have incurred them *but for Mcavoyamaya's relentless pursuit of a frivolous claim*.

[11] This misstates my prior ruling. In my order granting summary judgment in the defendants' favor, I reprimanded Mcavoyamaya for his various misrepresentations to the court and general conduct in this litigation. ECF No. 118 at 1–2. I indicated that his failure to comply with the Nevada Rules of Professional Conduct, the local rules, or other authority could result in my taking of "appropriate action." *Id.* at 2. But nowhere did I say that he would not be sanctioned in this case. Regardless, in granting the defendants' fees motions, I am not sua sponte sanctioning Mcavoyamaya, contrary to his representation and belief. I am merely resolving sanctions motions that the defendants brought against him.

process the grievance for Lall.[12] ECF No. 141-4. A few days later, Local 165 made a supplemental production, including copies of text messages between Lall and the Union indicating that after she was terminated, she unequivocally told the Union that she did not want to proceed with arbitrating her grievance. ECF No. 141-5. At that point, Mcavoyamaya was presented with evidence that the Union had filed grievances on Lall's behalf—despite Mcavoyamaya's insistence that it "never" did. He had also been presented with evidence that Lall herself had opted out of pursuing the grievance further when she explained to the union representative that she did not want to proceed with either mediation or arbitration, unless her lawyer could be present. Mcavoyamaya insists that Lall was not opting out of the arbitration altogether but was withdrawing only to the extent that she could not have her own counsel (Mcavoyamaya) present with her. ECF No. 144 at 16, 21–22.

From the evidence before me, it is evident that Mcavoyamaya knew as early as March 2021 that the duty-of-fair-representation claim against the Union was doomed because 1) he was presented with evidence showing that the Union had filed grievances on Lall's behalf and 2) was presented with valid, binding legal authority holding that unions are allowed to restrict their members from having attorneys present during grievance meetings. ECF No. 141-2 at 2. Mcavoyamaya could have—and a reasonable attorney would have—put the pieces together that his client's claim against the Union could not succeed. Nonetheless, those pieces were put together *for him* in April 2021, when Dowling called Mcavoyamaya to explain why the claim was unavailing and exchanged emails discussing the same. ECF No. 141-6 at 2 (in an email from Dowling to Mcavoyamaya, Dowling stated "[t]he Ninth Circuit has stated clearly and concisely that 'no court has adopted the rule that employees are entitled to independently retained counsel in arbitration proceedings, or that the exclusion of such attorneys from arbitration

---

[12] Throughout the pleadings and briefs, Mcavoyamaya *repeatedly* pled that the Union never processed a single grievance for Lall. *See, e.g.*, ECF No. 1 at ¶ 91; ECF No. 51 at ¶¶ 45, 55, 63; ECF No. 77 at 40. The evidence shows that this was not true. Indeed, Lall ultimately conceded that Local 165 filed two grievances on her behalf, one in November 2018 and one for Lall's termination in January 2020. ECF No. 72-3 at 141; ECF No. 93 at 18–19.

violates the duty of fair representation." (citing *Castelli v. Douglas Aircraft Co.*, 752, F.2d 1480, 1483 (9th Cir. 1985)); ECF No. 141-7.

Dowling also sent Mcavoyamaya a letter specifically requesting that the duty-of-fair-representation claim be dropped, citing the evidence showing that Lall followed Mcavoyamaya's advice and asked the Union not to pursue her grievances any further. ECF No. 141-7 at 2–3. The letter stated that "it is now clear beyond dispute that Local 165 processed Ms. Lall's grievance properly from the documents produced in discovery." *Id.* at 3. It discussed the procedural history of Lall's grievances and the steps that Local 165 had undertaken to assist her in pursuing them. *Id.* And it concluded that "[i]t is not arbitrary, discriminatory, or in bad faith to withdraw a grievance when the grievant says she does not want to pursue it any further. Nor is it a violation of the duty of fair representation to prohibit employees from bringing their own counsel to grievance meetings. **There is no reason to waste our clients' time litigating this matter further.**" *Id.* (emphasis added). Dowling further noted that Lall's deposition was coming up, and that it would "incur additional costs that will complicate any potential agreement to dismiss [Local 165] from this case." *Id.*

As Dowling stated in the letter, it is well established that it is not a breach of the duty of fair representation for a union to restrict a member's access to an attorney, nor is it a breach to listen to the member's wishes and not continue pursuing the grievance. *Castelli*, 752 F.2d at 1483; *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 646 (9th Cir. 1989) (discussing exhaustion requirement before filing duty-of-fair-representation claim); *Debeikes v. Hawaiian Airlines, Inc.*, 141 F.Supp.3d 1075, 1092 (D. Haw. 2015), *aff'd* 725 F. App'x 499 (9th Cir. 2018); *see also Jav v. SEIU-UHW West*, 2017 WL 697110, at *2–4 (N.D. Cal. Feb. 22, 2017). Lall acknowledged that he was "fully aware of the case law on the subject of this dispute[.]" ECF No. 141-8 at 2. He even considered voluntarily dismissing the claim against the Union but "concluded that dismissal of the claim at this time is not warranted." *Id.* Despite the ample evidence and case law presented to him indicating that Lall had not properly exhausted her grievances (because she told the Union not to pursue them

further), that Lall was not entitled to counsel at the mediation, and that Local 165 had satisfied its obligations to Lall, Mcavoyamaya nonetheless decided to pursue the claim all the way through summary judgment.[13] But even before the summary-judgment stage, Mcavoyamaya doubled down on his position. Within a month of the letter from Dowling and Mcavoyamaya's acknowledgement that he had considered dropping the claim, he filed an amended complaint on Lall's behalf, *which still included the duty-of-fair-representation claim against Local 165*. ECF No. 141-1 at 10–11.

Local 165 relies on *Schutts v. Bentley Nevada Corp.* as an example of a judge in this district sanctioning an attorney under § 1927 for continuing to pursue a frivolous claim to summary judgment even after being confronted with valid legal authority indicating that the claim could not succeed. ECF No. 141-1 at 17–18 (citing 966 F.Supp. 1549, 1559–60 (D. Nev. 1997)). The *Schutts* court held the offending attorney liable for fees incurred from the date after which he became aware of the legal authority that foreclosed his client's claims. Further, the court stated that "[t]he responsibility for discovering relevant legal authority rested with [p]laintiff's counsel himself." *Schutts*, 966 F. Supp. at 1563. It continued that "[a] lawyer admitted to practice before this court must apprise himself . . . of the relevant law." *Id.* This is just as true today as it was when *Schutts* was decided. *Trulis* is also instructive. There, the Ninth Circuit held that the district court abused its discretion when it failed to sanction counsel under § 1927 for pursuing claims to summary judgment instead of dismissing them once it became clear that they could not succeed. 107 F.3d at 692. Under these cases, I conclude that Local 165 is entitled to attorneys' fees after March 26, 2021, because Mcavoyamaya acted—at a minimum, recklessly—in maintaining this clearly meritless claim.[14] What pushed his conduct over the line from reckless to bad faith was

---

[13] It is likely that Mcavoyamaya knew that pursuing the claim was futile even before March 2021, assuming that he asked his client the appropriate questions about her case. But I extend him the benefit of the doubt, as Local 165 does, and find that, at the latest, he knew of the claim's futility in March 2021 after receiving the Union's first document production.

[14] Nor am I the first to make this conclusion. Several other judges have experienced from Mcavoyamaya similarly reckless litigation tactics that have warranted sanctions—or warnings—in the past. This appears to be one tile of many in the troubling mosaic of Mcavoyamaya's disregard for the rules in both

his decision to file an amended complaint *after* receiving information upon which a reasonable attorney would have dismissed the duty-of-fair-representation claim against Local 165.

              2.    *The method used to calculate the requested fees is reasonable, and the attorneys' rates are commensurate with others in the community.*

Nowhere in his response does Mcavoyamaya object to the rates that Dowling and the other union attorneys are charging or to the reasonableness of the number of hours for which they seek fees. Instead, he merely attempts to relitigate the underlying issues and merits of the case, on which I already ruled when granting summary judgment in Local 165's favor. He can do so on appeal, but I will not rehash the issues here.[15]

---

federal and state court. *See, e.g.*, *Brown v. Tromba*, 2021 WL 1063793 (D. Nev. March 18, 2021) (characterizing as "utterly divorced from reality" and "contrary to the Local Rules" Mcavoyamaya's position that the court should investigate whether a case "involves the same claims between the same parties as a prior closed case that is on appeal"); *Cabrera v. Serv. Emps. Int'l Union*, 2020 WL 2771186 (D. Nev. May 28, 2020) (finding that Mcavoyamaya "defied this [c]ourt's order," concluding that his "conduct amounts to outright forum-shopping," and imposing sanctions in the form of attorneys' fees); *Garcia v. Serv. Emps. Int'l Union*, 2019 WL 8750276 (D. Nev. Jan. 17, 2019) (imposing discovery sanctions "against counsel himself" because of a motion to compel that "was necessitated by counsel's unfounded legal positions"), *aff'd*, 856 F. App'x 105 (9th Cir. 2021); *Garcia v. Serv. Emps. Int'l Union*, 2019 WL 8750275, at *2 (D. Nev. May 23, 2019) (noting that the court "would be well within its discretion to impose sanctions[,]" but instead "provid[ing] a final warning to [Mcavoyamaya] that he must comply with his Rule 11 obligations moving forward" and his "[f]ailure to do so may result in the imposition of sanctions."); *Mueller v. Hinds*, 519 P.3d 501 (Nev. 2022) (unpublished) (finding that Mcavoyamaya failed to provide a required index but declining to impose sanctions); *Brown v. Tromba*, 2023 WL 5457049 (D. Nev. Aug. 23, 2023) (sanctioning Mcavoyamaya and another attorney $500 jointly and severally under Rule 11 for making an objectively false allegation and refusing to respond to a Rule 11 safe-harbor notice).

[15] Mcavoyamaya urges that my decision to grant summary judgment in Local 165's favor was "on an incredibly narrow issue, pursuant to persuasive precedent," rather than binding case law. ECF No. 144 at 22. As Local 165 points out, my decision cited to an unpublished case (*Jay*, 2017 WL 697110) as analogous to this one, and that case "simply applies binding precedent." ECF No. 146 at 10 (discussing that *Jay* relied on *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1319 (9th Cir. 1990), and *Vaca v. Sipes*, 386 U.S. 171 (1967)). If Mcavoyamaya disagrees with my decision—which it appears he does—then this is not the appropriate juncture at which to voice that discord: appeal is. Nor is a response to a post-judgment motion for attorneys' fees the point at which counsel should seek to relitigate the merits of the underlying case, assert that there remain disputes of fact, or raise new theories. Mcavoyamaya attempts to do each of those here, even making the brazen—and new—assertion that an employee is not required to exhaust remedies with a union before filing a duty-of-fair-representation claim. *See* ECF No. 146 at 5–7 (citing ECF No. 144 at 20–22). He raised this novel argument again during the Sanctions hearing. It seems that it is Mcavoyamaya's habit to raise new arguments at inappropriate times, just as he did in his replies to the defendants' motions for summary judgment and at the summary-judgment hearing. *See* ECF Nos. 100; 101; 131.

It is clear Mcavoyamaya was aware that the Union had fulfilled its duty to Lall in April 2021. In fact, he had actively considered dropping the claim at that time—but did not. To pursue the doomed claim for two years after that amounted to frivolity. "Despite a district court's discretion in determining the amount of a fee award, it 'must calculate awards for attorneys' fees using the 'lodestar' method.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per curiam)). "[T]he amount of that fee must be determined on the facts of each case[.]" *Id.* at 978 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). And "[t]he 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate." *Id.* (quoting *Ferland*, 244 F.3d at 1149 n.4).

Mcavoyamaya is also silent as to the reasonableness of Local 165's hourly rates. Local 165 seeks fees incurred from March 26, 2021, to the present (plus fees accrued in filing its reply brief and preparation for oral argument at the Sanctions hearing). The fees requested account for 273.8 hours of Dowling's time, 9.4 hours of Kristin Martin's time, and 1.2 hours of Richard McCracken's time. ECF No. 141-1 at 20 (citing ECF No. 141-2 at ¶¶ 8–9). The corresponding hourly rates sought are $300 for Dowling's work, $450 for Martin's work, and $550 for McCracken's work. *Id.* at 22. Local 165 indicates that outside of the District of Nevada, its counsel charges a considerably higher rate. ECF No. 141-1 at 23. It also notes that these are not the rates it actually charges its clients. *Id.*

I find that Local 165 provides sufficient information on which I can base a fees award. It discusses the qualifications of the attorneys and addresses all the relevant factors under the local rules. I have considered this information, along with cases discussing reasonable hourly rates in this community, and I find that the proposed hourly rates are reasonable and commensurate with the rates charged in the Las Vegas market for this kind of work. *See Mayorga*, 2023 WL 2020075, at *7 (finding fees of $850, $500, and $350 reasonable) (collecting cases); *Scott v. Smith's Food & Drug Centers, Inc.*, 2020 WL 343642, at *2 (D. Nev. Jan. 21, 2020) (collecting cases); *see also*

11

*PharMerica Mountain, LLC v. RCSRP Corp.*, 2022 WL 594554, at *2 (D. Nev. Feb. 28, 2022); *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, 2022 WL 990640, at *1 (D. Nev. Apr. 1, 2022).

Accordingly, the court awards Local 165 $93,030 in attorneys' fees, and $2,892 in costs incurred for defending this case after March of 2021.

b.  *The Cromwell defendants' motion.*

The Cromwell defendants likewise seek an award of attorneys' fees and costs under § 1927 and the court's inherent power. ECF No. 142-1. They contend that Mcavoyamaya's "misguided conduct began with his decision to assert seven different causes of action against The Cromwell with no persuasive facts or law to support the claims." *Id.* at 6. The nature of his sanctionable conduct as to the Cromwell defendants is more pervasive and ongoing than his pursuit of the duty-of-fair-representation claim against Local 165. The Cromwell defendants urge that because of Mcavoyamaya's unsupported allegations in his briefs and his misrepresentations and "outright dishonesty" at the summary-judgment hearing, "if ever there was a case in which a defendant should recover their fees, this is it." *Id.* at 7. They seek an award of $172,538.33 in fees and $13,940.10 in costs. *Id.* at 20–21. Alternatively, they seek $45,470 in accrued fees related to the summary-judgment motions. *Id.* at 21. They provide the required itemized list of fees and costs accrued in this case. ECF No. 142-4; ECF No. 142-5. Mcavoyamaya reiterates many of the same arguments that he raises in opposition to Local 165's motion, contending that he did not multiply the proceedings; there is no particularized showing of bad faith; the request for fees is itself made in bad faith and is not connected to the offending conduct; and the motion is untimely. ECF No. 143 at 5–23. To the extent that he raises the same objections to the Cromwell defendants' motions, my rulings, *supra*, stand.

1.  *Mcavoyamaya acted in bad faith at the summary-judgment stage.*

The Cromwell defendants take the position that Mcavoyamaya maintained the entire action in bad faith and that he opposed their motion for summary judgment in bad faith. ECF No. 142-1 at 13–17. They contend that "the undisputed facts confirmed that [Lall] was terminated

for violating The Cromwell's cash handling policy four times in her last nine months of employment" and that her accusations of discrimination and retaliation were "entirely unsupported by the evidence." *Id.* at 7–8. The basis for many of the Cromwell defendants' allegations of bad faith is the hearing at which Mcavoyamaya was unprepared and made several misrepresentations of law and fact to the court. ECF No. 131. They contend that even if Mcavoyamaya brought this case in good faith, "'[b]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." ECF No. 142-1 at 13. They point to at least four of the Nevada Rules of Professional Conduct that Mcavoyamaya violated: (1) competence, (2) meritorious claims and contentions, (3) candor toward the tribunal, and (4) misconduct. *Id.* at 15 n.1. And finally, they characterize his litigation tactics as "designed to thwart a fair determination of straightforward legal issues, creating a bewildering and ambiguous record and violat[ing] several rules regarding legal procedure and professional conduct. *Id.* at 16 (citing ECF No. 118 at 2).

Although the Cromwell defendants classify Mcavoyamaya's conduct in this entire case as bad faith, I disagree. It is often difficult to determine at such an early stage whether a client's claims have merit, and the deficiencies of such claims often do not appear until at least some discovery has been conducted. Because the Cromwell defendants present no evidence that Mcavoyamaya acted in bad faith in bringing this case, I consider only the narrower request related to his conduct leading up to and at summary judgment. As argued by the Cromwell in its motion, Mcavoyamaya should have withdrawn the FLMA claim for relief well before summary judgment. EFC No. 142-1 at 9. I agree. Mcavoyamaya's failure to notify the court or the defendants of his intent to drop the FMLA claim until the March 10, 2023 hearing, despite defendants having raised the claim in their summary judgment motions is, simply put, egregious. *See* ECF Nos. 73, 94, 117.

At the Sanctions hearing, I asked the Cromwell to cite Mcavoyamaya's specific transgressions to support their motion. They responded that Mcavoyamaya: (1) had knowledge

as early as the motion to dismiss stage that Lall had failed to exhaust her administrative remedies, (2) raised new arguments in the reply briefing, argued for the first time at the summary judgment hearing (specifically, the "continuing violation" argument), and (3) made misleading or inaccurate representations[16] about the evidence at the summary judgment hearing. The Cromwell also alleged that on more than one occasion, Mcavoyamaya failed to answer direct questions from the court[17] and engaged in "gaslight[ing]."

While the Cromwell cited one misrepresentation made by Mcavoyamaya during the Sanctions hearing, the court can recall others. For example, Mcavoyamaya made misrepresentations about an e-mail from Lall's supervisor. At the summary judgment hearing, Mcavoyamaya argued to the court that there was an e-mail showing that a Cromwell employee was "going to accuse [Lall] of drug use," suggesting it was documentary evidence of harassment and bad behavior, thus supporting her bringing this case. The court re-reviewed the e-mail Mcavoyamaya was referencing in making that argument in open court.[18] Upon completion, I asked Mcavoyamaya where in the e-mail it stated that the employee was going to accuse Lall of drug use. He responded that it "was in that e-email," which was simply untrue. What the e-mail actually discussed was the possibility of drug testing Lall given the particular symptoms she was exhibiting. The e-mail did not state that the Cromwell (or its employee) was going to accuse Lall of drug abuse. In making this misleading argument, Mcavoyamaya also failed to account for other e-mails showing Lall's supervisors' attempts to accommodate her or minimize potential risk to her health and others at the property given her symptoms (*i.e.*, seizures).

---

[16] The Cromwell referenced Mcavoyamaya's representation at the summary judgment hearing of a (non-existent) "order" allowing the late filing of Lall's Equal Employment Opportunity Commission charge.

[17] I did not need to look hard for an example of Mcavoyamaya's failure to answer questions from the court. During the Sanctions hearing, I twice asked him where in his opposition to the motions seeking fees and costs did he specifically challenge defendants' requests. He did not answer my question either time. Rather, he argued—carte blanche—that neither side should be able to recover any fees because there was no bad faith on his part.

[18] Counsel for the Union provided the court with a copy of the e-mail as Mcavoyamaya was unprepared to provide a copy to the court or cite to the email on the record so the court could bring it up electronically.

As an example of Mcavoyamaya making misleading or inaccurate representations to the court, I asked Mcavoyamaya on what he was relying to argue that declarations might not be "even permissible" for 30(b)(6) witnesses. ECF No. 131 at 31. He responded in an unclear and roundabout way that he did not know. *Id.* at 31–32. When asked why he would make an argument to the court if he did not know if a declaration was sufficient, Mcavoyamaya stated—without any authority—that the court was supposed to give more weight to testimony versus declarations. *Id.* at 32–33.

I conclude that 1) Mcavoyamaya should have withdrawn his FMLA claim before the summary-judgment hearing, 2) he should not have raised novel arguments for the first time in reply briefs or at oral argument, and 3) he should not have made misrepresentations to the court about the facts, evidence, or the law. Each of these discussed amounts to sanctionable conduct by Mcavoyamaya, and I find that they each meet both the reckless and bad faith standard.

### 2. *The Cromwell defendants seek reasonable hourly rates.*

The Cromwell defendants address the factors required by the local rules when moving for attorneys' fees. ECF No. 142-1 at 19–26. They seek to recover for 127.6 hours of work related to summary judgment (ECF No. 142-5), and they indicate that their counsels' hourly rates are $405 (Godoy), $325 (Tantoy), and $350 (Benedict), and their paralegals' hourly rates are $125. ECF No. 142-1 at 22–23. I conclude the same as to these rates as I did for Local 165's—they are reasonable and commensurate with rates charged for similar work in this legal market.[19] *See supra* section II, a, 2.

I find that the Cromwell provides sufficient information on which I can base an award of attorneys' fees for its work related to summary judgment. It discusses the qualifications of the attorneys and addresses all the relevant factors under the local rules. Accordingly, the court awards the Cromwell $45,470 in attorneys' fees. The Cromwell did not provide clear

---

[19] Mcavoyamaya is also silent as to the reasonableness of the Cromwell's hourly rates.

information regarding costs related only to the summary judgment proceedings and therefore, I defer issuing costs. If the Cromwell seeks to recover costs related to the summary judgment motions, they must submit updated cost information within 14 days of today's order.

### III. Conclusion

IT IS THEREFORE ORDERED that Local 165's motion for attorneys' fees **[ECF No. 141] is GRANTED in part**: Local 165 is awarded fees of $93,030 in attorneys' fees, and $2,892 in costs, against Michael Mcavoyamaya, personally.

IT IS FURTHER ORDERED that the Cromwell defendants' motion for attorneys' fees **[ECF No. 142] is GRANTED in part**: the Cromwell defendants are awarded fees of $45,470, against Michael Mcavoyamaya, personally. The Court defers any order of costs as set forth in this order. If the Cromwell seeks to recover costs, it must submit a separate brief detailing the amount it seeks to recover within 14 days of this order. Mcavoyamaya may file a response within 14 days of the brief being filed. No reply is needed at this time.

DATED: September 21, 2023

_____
Cristina D. Silva
United States District Judge